·THE ATLANTIC CITY AND SUBURBAN GAS AND FUEL COMPANY

*v.*

HARRY H. JOHNSON.

[Decided May 29th, 1912.]

Where the defendant was employed by the complainant corporation as its manager, and also as the manager of another corporation (whose stock was all owned by the complainant) for the period of one year upon the terms that he should be repaid for expenses incurred in behalf of the two companies. but should serve without salary or wages for work done and services rendered by him to the two companies—*Held,* in a suit for an accounting, that the defendant is entitled to the money appropriated to himself in respect of such expenses incurred on behalf of the two corporations, but not for the amount claimed from them in respect of salary.

On final hearing on pleadings and proofs.

*Messrs. Thompson & Smathers,* for the complainant.

*Messrs. Bolte & Sooy,* for the defendant.

.LEAMING, V. C.

I will not take this case under advisement, because I am convinced I can dispose of it at this time, with the testimony fresh in my memory, to better advantage than by giving it further consideration. The legal points involved are, to my mind, sufficiently free from doubt to justify a decision upon the views which I now entertain, without giving further examination to the legal questions presented.

There are two classes of items here involved. The first class consists of charges made by the manager of the gas company and of the electric company for expenses which he claims he has incurred in behalf of the two companies, respectively, covering a period of a year; the expenses charged against the gas company

being $230.10 and the expenses charged against the electric company being $221.18.

The testimony of all of the witnesses who have testified upon this subject has been to the effect that a resolution was passed at the gas company's directors' meeting of January 8th, 1908, touching the amount that the manager should be privileged to charge for the ensuing year for personal expenses incurred by him in the performance of his duties as manager, and that his agreement was that he would charge nothing for his services as manager during that period; but the testimony is in conflict as to what maximum amount the resolution which was passed at that time authorized him to charge by way of personal expenses. The minutes of the company are entirely silent and do not even show that any action at all was taken upon the subject. All who have testified agree that the resolution which was passed authorized a charge upon the part of the manager for personal expenses as manager of the gas company not to exceed $25 per month, or $300 per year. There is no objection, therefore, to the bill for the expenses incurred in behalf of the gas company, providing, of course, such expenses were actually incurred. The manager claims, however, and his testimony has some support, that the amount allowed by the resolution, as passed, was $25 per month for each company—that is, $300 a year for the electric company and $300 a year for the gas company; the understanding having been, as he states it, that he would charge nothing for his services and would not incur personal expenses exceeding that amount, namely, $600.

The situation at that time was that the gas company was an operating concern with its own board of directors and officers, and the gas company owned all of the stock of the electric company and operated the electric company. The electric company had no board of directors of its own, and no officers of its own, and the gas company, by reason of owning the stock of the electric company, assumed the right to manage its affairs, and for reasons of its own, kept the accounts of the electric company separate from the accounts of the gas company. It seems to me entirely manifest as a legal proposition that what the stockholders and board of directors of the gas company thus assumed to do

was clearly illegal. The electric corporation, as a corporation, was entitled to its own board of directors and its own officers to manage and conduct its affairs, no matter by whom the stock was held, and no legal or binding resolution could be passed by the board of directors of the gas company fixing the relations between the electric company and its manager. The charge against the electric company therefore finds no legal support in the resolution passed by the gas company. That, I think, is a proposition of law that cannot well admit of doubt.

But another element is to be considered in this connection. This bill against the electric company is not a bill for salary. It is a bill for expenses—that is, money paid for the use of the electric company; and it is not necessary that an express contract should exist between the electric corporation and the person who worked for it or spent money for it in order to enable such person to recover either for services or expenses, unless there should be a contract, express or implied, that the expenses or the services were to be a gratuity; so the situation here presented is that of a manager of an electric company who has operated the affairs of that company under a stipulation made by him that he would not charge for his services, but who claims the right to compensation for moneys actually expended by him in behalf of the company. If there were no authorization by either the electric company or by the gas company for him to charge his actual personal expenses reasonably incurred in conducting the affairs of the electric company, there is no legal obstacle to his recovering those expenses, in the absence of evidence that the expenses so incurred were contributed by him as a gratuity. It is a claim for money had and received by the electric company, and if that money was actually expended by the manager from his own funds and properly expended, he was entitled to have it back without a contract if, as I have already stated, there was no engagement upon his part to expend that money gratuitously; so, while the legal obstacle which I first suggested would prevent a recovery of the expenses incurred in behalf of the electric company under or by virtue of the resolution which is claimed, it is not here an insurmountable obstacle, because if the expenses were honestly and fairly incurred, the manager was entitled to have them repaid by

the electric company without any resolution for that purpose from any company. The evidence touching the resolution already referred to is clearly inadequate to establish the fact that the manager was to contribute his expenses incurred in behalf of the electric company to that company.

The only question then touching this expense account that can possibly be operative, to my mind, to defeat the right of the manager to receive the money claimed by him for expenses is the fact, if a fact, that he did not actually expend the money. His testimony is that every item of expense that was charged against either of the companies during that year was actually incurred, and that this applies not only to the gas company but to the electric company. He says that vouchers were made out by him for every expenditure he made, and that those vouchers were filed when checks were drawn to his order for the amounts, and that those vouchers should now be in the hands of the one or the other of these companies. The only testimony we have to disprove that is scarcely more than an inference or suspicion. The charges for expenses during the last two months, that is during the period subsequent to the time the gas company had discovered or thought it had discovered a purchaser for the entire properties, were very much heavier than they had been prior to that time. This is put forward as a suspicious circumstance, and there has been no very adequate explanation of why the expenses during those months were so much in excess of the expenses for the prior months, but, in the absence of some evidence to justify the conclusion that these expenses have not actually been incurred and paid by the manager from his own funds, I cannot feel justified in reaching the conclusion that the account is an inflated one. I feel, under the evidence, that I must conclude that these moneys, which the manager swears he expended, were by him expended from his own funds in the affairs of these two companies; and it cannot be said, in view of his testimony, that he expended any portion of it gratuitously, and, under those circumstances, it seems to me he is, in any aspect of the case, entitled to recover, or rather to retain, as against this claim by this suit, these items of expenses incurred.

The other class of items which are in dispute are of wholly a different nature and stand upon an entirely different condition of the law. These items are two in number; one is a charge of $300 for services to the gas company and the other for $300 for services to the electric company. It is admitted by the defendant, the manager already referred to, that his stipulation was that he would not charge for his services as manager. He conceived, however, at the last moment of his connection with the affairs of the companies that he was justly entitled to some compensation for his services as an active participant in the negotiations for the sale of the assets of the gas company, and presented these two bills for services at the last meeting of the gas company. Now, in order to appreciate the legal status of the situation at that time existing, it must be borne in mind that prior to that time the gas company had found a purchaser of its plant and for its stock in the electric company. I refer to the new company as a purchaser, but in fact the transaction was that of a ninety-nine years lease, but in effect a purchase, because it was a purchaser or lessee who proposed to take over the entire assets of the two companies and become the sole proprietor of the two companies with all of their assets and assume the burdens of their liabilities. It was entirely proper for the gas company alone to act upon a proposition of that nature, because the gas company was the owner of all the stock in the electric company, so the gas company could appropriately agree to such disposition of the gas company and the stock of the electric company as it chose. Accordingly, at a stockholders' meeting of the gas company, a proposition of purchase, or lease, which had been made by the new company, was approved. It then became necessary to have the board of directors of the gas company pass upon this transaction or proposed transfer of the assets, and accordingly a meeting of the board of directors was called for that purpose. In the meantime a contract of sale or lease had been agreed upon in all of its terms. It had, I think, in fact been signed, at least tentatively, prior to this meeting of the board of directors, so that all that remained to be done to effect a complete transfer of the entire assets of the gas company and the entire stock of the electric company to the new company was a ratification by the board of

directors of the gas company of the action which had already been taken by its stockholders; in other words, an adoption of the contract which the stockholders had approved and which had already apparently been executed, or at least signed by some of the parties and agreed upon by both sides, subject to the approval by the directors at this approaching meeting of the gas company. That meeting was held on the afternoon of December 28th, 1908, and a vote was taken approving of the transfer and sale, and immediately thereafter, it appears, immediately after the adjournment of that meeting, the physical assets of the gas and electric company were turned over to the new proprietors, and they assumed charge of the affairs, and the two old companies were ended so far as activities under the old management were concerned. Now, the situation thus presented—a situation in which the gas company had agreed to transfer its entire assets to the new company and was awaiting only a ratification by the board of the contract so agreed upon—was a situation of trust and confidence. The situation that then existed was one in which the old companies were, as against the purchasing company, denied the right to dispose of assets without consideration. Without any express contract to that effect the new company not only did trust but had a right to trust the old company that it would not do anything to improperly deplete the assets then on hand and which were to be turned over to the purchasing company. It is true that the purchasing company did not have any definite knowledge of the intricate details of the affairs of the old companies. The utmost they knew was information which they had acquired from an audit made a month or so before showing the entire condition of the affairs of the gas company and of the electric company, but they knew that in the interim between their audit and the date the contract was to be consummated the affairs of the electric and gas company would be conducted in their ordinary course, and they had a right to depend upon that being done, and they had a right to require, and they had a right to believe and trust that that requirement would be complied with, that the old companies would not deplete their assets. Now, let it be understood distinctly what is here referred to as a depletion of assets. If either of the old companies in the last

hour of the board meeting, which terminated their old management, owed a debt, it was privileged to pay it. No objection could exist upon the part of the new company, the purchasing company, to the payment of any just debts owed by the gas company or owed by the electric company, but the new company did have a right to object to the payment of a bill that was not a legal obligation. It may be that the amount of this bill of Mr. Johnson's of $600 has been well earned. It may be that this work was of a nature and was so beneficial that $600 will inadequately pay for it, but that is not the question. The situation presented is that Mr. Johnson did whatever he did under an express engagement that there would be no charge for service, and it was not his right, nor was it the company's right, at the last moment, to conclude that they would compensate him for services which were not to be compensated for. That transaction was, in effect, exactly the same as though a gift had been made by the old companies to a stranger of $600 in amount. I see no way that I can reach a conclusion, no matter what resolution was actually passed in that board meeting, to support the payment to Mr. Johnson of either $300 or $600 in compensation of services rendered by him, because of the fact that the relations which at that time existed between the seller and the purchaser were such that the seller had no right, as against the purchaser, to divert the funds in that manner. I have repeatedly used the expression as between the old companies and the purchaser. This suit is brought by the gas company in behalf of it and the electric company, but, while the suit is in that form, it is really a suit for and must enure to the benefit of the present lessee of these companies. So, if the transaction of the board in allowing this payment of $600, or these two payments of $300 each to Mr. Johnson, was invalid and unjust as against the purchasing company, there must be a recovery in this suit for that amount.

Another element, I think, ought to be referred to in this case. The minutes of this meeting show that the resolution which was adopted was that Mr. Johnson was to be paid $300 and not $600. The testimony of some of the witnesses is to the effect that there were two bills of $300 each, one against the electric company and one against the gas company. The testimony of other witnesses

is to the effect that one bill only was presented and that no bill was passed, and the testimony is in irreconcilable conflict as to what transpired at that meeting except in one respect; all the witnesses agree that an amendment to the motion that Mr. Johnson be paid was offered by Mr. Riddle and adopted. That amendment has been expressed in various forms by different witnesses, but by all of them has been in general effect that the allowance of this bill, or these bills, if there were two, should not in any way be operative to defeat the then pending contract. Now what, gentlemen, was the spirit of that amendment? The spirit of that amendment—and all agree that it was adopted, if anything was adopted, it went with the resolution according to the testimony of everybody—the spirit of that amendment was that this bill of Mr. Johnson's should not interfere with this lease. It may have been worded that it should not be operative to defeat the lease—that is, the sale should not fall through by reason of the allowance of these bills, but if that was the narrow spirit of the resolution, it was manifestly unlawful, for it was, in effect, an attempt to get rid of money without the purchasing company knowing it; but I am inclined to think the real spirit of that resolution, and the spirit in which it received such favor as it might have received at the time, was that this money should not be paid to Mr. Johnson over any objection of the new company. The new company did not object, and could not object, because it was not allowed to know that Mr. Johnson had taken this money from the treasury. As soon as it did find it out it objected, therefore I say, from an equitable standpoint, even the resolution as amended, conceding it to have been passed, should not be deemed operative as against the purchasing company.

It might also be suggested that too much doubt exists as to whether any resolution authorizing payment to Mr. Johnson was in fact adopted, to warrant a payment which could find support alone from a resolution of that nature; but I do not base my decision on that ground. My broader view is that the allowance by that last meeting of the gas company of any compensation to a manager for services which he had agreed to perform without compensation was, as against the purchasing company, in effect,

a gift and void, and therefore Mr. Johnson cannot be allowed to retain this money and should now be compelled to restore it.

My conclusion will be that Mr. Johnson will be entitled to the money which he has appropriated to himself of $220.10 and $221.18, making a total of $441.28, but cannot retain the $600, and that a decree should be entered against him for that amount.

### SUPPLEMENTAL.

Since pronouncing the above decision counsel for defendant has directed my attention to a claim of laches made in the answer.

I am convinced that the evidence discloses no unreasonable delay in bringing this suit after the fact had been ascertained that $600 had been received by defendant for services at the termination of the meeting which immediately preceded the physical transfer of the assets to the new proprietors.

A further consideration of the case in all of its aspects confirms the views expressed by me at the conclusion of the hearing.